**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re MARCHFIRST, INC., et al.,     ) | |
|     ) | |
|     ) | No. 04 C 8293 |
|        Debtors,     ) | |
| ———————————————————— ) | |
|     ) | |
| KPMG LLP,     ) | Appeal from: |
|     ) | |
|        Appellant,     ) | 01 B 24742 |
|     ) | |
|     v.     ) | Hon. John D. Schwartz |
|     ) | |
| Andrew J. Maxwell, not individually, ) | |
| but as Chapter 7 Trustee for the     ) | |
| bankruptcy estates of Marchfirst,     ) | |
| Inc.     ) | |

## MEMORANDUM OPINION & ORDER

This is an appeal from an order entered by Bankruptcy Judge John D. Schwartz approving certain settlements made by the Trustee for the bankruptcy estate of Marchfirst, Inc. and its affiliates. The order contains provisions that purport to bar the initiation of litigation against various parties to the settlement. The appeal challenges the validity of this "bar order" as well as a finding by Judge Schwartz to the effect that the settlement was made in good faith.

## Factual Background

Marchfirst, the bankrupt, was formed by the merger of Whittman-Hart, Inc. ("Whittman-Hart") and US Web/CKS on March 1, 2000. The merged company was a provider of internet-based consulting and technology services.

On April 12, 2001, slightly over a year after the merger, Marchfirst filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The case was converted to a Chapter 7 case on April 25, 2001 and Andrew J. Maxwell was appointed as the Chapter 7 trustee.

On February 26, 2002, the Trustee filed <u>Maxwell v. Bernard, et al.</u> ("Adversary No. 194"), an adversary complaint charging various officers and directors of Marchfirst with a host of reckless practices which allegedly contributed to the insolvency of the company. The tenor of the lengthy complaint is captured in its "Introduction":

> From its inception, marchFIRST suffered from a profound and fundamental lack of basic corporate management. Management embarked on costly, ill-considered ventures without ever seeking, much less obtaining, Board approval. When the Board learned of those unauthorized ventures, it ignored both the occurrence and the ramifications of those unauthorized actions. Nor did the Board chastise management for the unauthorized and inappropriate actions, choosing instead either to ratify such actions without comment or to simply ignore them. Management also engaged in a variety of conduct designed to create the impression that marchFirst was enjoying success in the marketplace when it was really in deep financial trouble. The misimpressions were fostered by inappropriate venture investments, improper income recognition (abuses of "roundtripping"), over hiring, excessive real estate spending and a variety of other corporate waste. The marchFirst Board of Directors either was indifferent to management's rampant waste or affirmatively joined in the effort to create an unfounded illusion of success. This facade of success came at the cost of wasting untold millions of dollars by building an infrastructure for growth that did not exist at marchFirst. Those abuses continued and accelerated while marchFIRST was in the vicinity of insolvency. Management and the Board of Directors of marchFIRST recklessly, intentionally and

knowingly breached their duties to the company and its
creditors.

(R. Ex. 8 at 1-2.)

On April 11, 2003, the Trustee filed an adversary complaint against KPMG LLP ("KPMG"), an auditing firm, ("Adversary No. 3524"), alleging that KPMG had been guilty of malpractice and breach of contract in the conduct of its 1999 audit of Whittman-Hart, prior to the merger with US Web/CKS. This adversary proceeding is pending before Judge Joan B. Gottschall of this district. Generally, the complaint alleges that KPMG undertook to perform an audit of Whittman-Hart's 1999 financial statements in accordance with generally accepted accounting principles and issued an unqualified opinion to the effect that the financial statements did conform to those principles. The Trustee alleges that in fact the financial statements grossly inflated the value of Whittman-Hart's investments and revenues. It is alleged that Whittman-Hart and its successor, Marchfirst, suffered the following kinds of consequences as a result of KPMG's negligent audit:

> The damages that directly and proximately resulted to Whittman-Hart and marchFIRST from KPMG's breaches of its professional obligations are significant. Had it properly performed its professional obligations to Whittman-Hart and at least qualified its opinion on the 1999 financial statements – statements that materially overstated the company's performance, did not disclose the linkage between Whittman-Hart's investments in non-public companies and the revenue derived from those investments, did not disclose adequately Whittman-Hart's revenue recognition policies with respect to such investees, and did not disclose adequately the nature and extent of Whittman-Hart's related-party transactions — significant additional

"roundtripping" transactions that caused Whittman-Hart significant losses would likely not have occurred. Worse, had KPMG disclosed to Whittman-Hart's board or its audit committee that its financial statements results were not prepared in conformity with GAAP, Whittman-Hart would not have been able to complete a disastrous merger with US Web/CKS Corporation and would have been spared millions of dollars of losses resulting therefrom. Furthermore, had KPMG properly discharged the obligations it assumed in connection with its work on marchFirst's quarterly filings with the SEC, marchFirst also would have avoided shareholder lawsuits that followed the merger. Indeed, absent the damages that proximately flow from KPMG's breach of its professional obligations, marchFirst would not have become as deeply insolvent as it has, if it were not able to avoid insolvency altogether.

(R. Ex. 10 at 2-3.) Some of the officers and directors of Whittman-Hart allegedly responsible for the financial manipulations at the company became officers and directors of Marchfirst after the merger. They are included among the defendants sued by the Trustee in Adversary No. 194 and are referred to in this litigation as the "D&O Defendants."

The settlement approved by Judge Schwartz requires the insurance carriers for the D&O Defendants to pay $6 million to the Trustee and $18 million to a class of Marchfirst shareholders who sued the D&O Defendants in a securities fraud action, <u>Sutton v. Bernard, et al.</u>, pending before the undersigned. In return for these payments by the insurers, the D&O Defendants would be released from all liability to the Trustee and to this shareholder class. What gives rise to this appeal by KPMG is that Judge Schwartz's bar order and good faith finding also essay to discharge the D&O Defendants and their insurers from any liability for contribution to KPMG should KPMG be found

liable to the Trustee in Adversary No. 3524.

The settlement agreement makes clear that the bar order and good faith finding are critical components, and, should they be set aside, the settlement would fail. All parties to the settlement – the Trustee, the D&O Defendants, their insurers and the shareholder plaintiff class — support the settlement.

## Discussion

## I.

## The Bar Order

The bar order in question provides in pertinent part that:

> 5.  Upon the disbursement of the Funds to the Trustee, any and all persons and entities which have held or asserted, which hold or assert, or which may in the future hold or assert any claims ... against the D&O Defendants arising out of, related to, based upon, or in any way connected to the Claims alleged by the Trustee in Adversary No. 194 or matters underlying the Settlement Agreement, ... shall be hereby permanently barred, enjoined and restrained from commencing or continuing any action against ... the D&O Defendants, however styled, whether for indemnification, contribution or otherwise denominated, arising out of, related to, based upon, or in any way connected to the Claims alleged by the Trustee in Adversary No. 194 or matters underlying the Settlement Agreement .... Notwithstanding anything to the contrary in the Settlement Agreement, this bar order shall include any claim against the D&O Defendants ... however styled, whether for indemnification, contribution or otherwise denominated, arising out of or derivative of Maxwell v. KPMG, Case No. 03 C 3524 (N.D. Ill.).

(R. Ex. 5 at 3-4.) It is the position of KPMG that it will have a contribution claim against the D&O Defendants in the event it should be found liable to the Trustee in Adversary No. 3524 for more than

its pro rata share of any liability to the Trustee it has in common with the D&O Defendants. Although KPMG has not filed a third-party action against the D&O Defendants in Adversary No. 3524, it claims the right to do so, pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2.

KPMG's contribution claim would be that the D&O Defendants made misrepresentations to KPMG concerning the financial condition of Whittman-Hart and that KPMG reasonably relied upon those misrepresentations in preparing the 1999 audit report.

## The Arguments on Appeal

KPMG argues that the bar orders exceed the authority of the bankruptcy judge because KPMG's possible claims against the D&O Defendants are not property of the bankruptcy estate. It is true that a bankruptcy court has no jurisdiction to bar actions which are not property of the estate. Its jurisdiction does include matters that are sufficiently "related" to the estate that they affect its administration. In re Kubly, 818 F.2d 643, 645 (7th Cir. 1987). But there is no authority for barring claims by third parties such as KPMG against other third parties such as the D&O defendants, whose property is not part of the bankrupt estate. Two cases from this district, cited by KPMG, illustrate the point. In the case of In re Sybaris Clubs Int'l., 189 B.R. 152 (Bankr. N.D. Ill. 1995), the court refused to confirm the debtors' plan of reorganization because it contained a permanent injunction barring suits against any officer

or director of the corporation, including its sole shareholder,
Kenneth Knudson. Numerous persons had purchased notes issued by the
debtor, and one of them had filed a class action against Knudson
claiming that he had violated the Illinois Securities Law in the sale
of the notes. The plaintiff in that case objected to the proposed
injunction. Judge Katz framed the issue as follows:

> The issue before the court ... is a narrow one: Does this
> court have the jurisdiction and power, under the Bankruptcy
> Code, to issue a permanent non-consensual injunction
> barring creditors' actions against a non-debtor third
> party?

Id. at 154. After an extensive review of the authorities, Judge Katz
concluded that the creditors' actions against "a non-debtor third
party" were neither property of the estate nor otherwise sufficiently
related to the estate to be considered subject to the jurisdiction
of the bankruptcy court. Confirmation of the plan was denied. Id.
at 159. A similar case is In re Forty-Eight Insulations, Inc., 149
B.R. 860 (N.D. Ill. 1992). The debtor, Forty-Eight Insulations Inc.,
("Forty-Eight"), a manufacturer of asbestos products, was a co-
insured along with its parent, Foster Wheeler Corporation ("FWC")
under a number of liability insurance policies. The debtor moved in
the bankruptcy court for approval of a compromise with some of the
insurers. The agreement called for an injunction against FWC, the
parent, barring it from asserting any claims against the insurers
under the policies. FWC objected to Forty-Eight's motion for
approval of the compromise and Bankruptcy Judge Barliant sustained

the objection.  On appeal by Forty-Eight, Judge Marovich of this court affirmed Judge Barliant's ruling:

> The first question before the court is whether Forty-Eight's interests as a co-insured under the subject policies are property of its estate which would then allow the Bankruptcy Court to enter orders which enable Forty-Eight to realize the value of those interests.  This issue was decided by the bankruptcy court judge.  The court held that FWC's property rights in the insurance policies are not part of the estate.  We affirm.
>
> Rights arising from insurance policies fall within the broad definition of property of the estate under § 541 of the Bankruptcy Code.  The bankruptcy court correctly distinguished, however, the rights of the debtor from the rights of FWC.  Only Forty-Eight's interests are part of the estate.  FWC's interest in the insurance policies is not part of the estate. The bankruptcy judge correctly noted that holding otherwise would allow the court to impair a third party's contract and property rights.

Id. at 863 (citation omitted).  It goes without saying that the settlement itself adds nothing to the jurisdiction of the bankruptcy judge, but to remove any doubt, In re Zale Corp., 62 F.3d 746, 756 (5th Cir. 1995), makes exactly that observation.

The peculiar aspect of this appeal is that appellees do not contend that KPMG's possible contribution claim against the D&O Defendants is property of the estate or that it is related to the estate in a way that would give the bankruptcy court jurisdiction over it.  Instead, their argument is that it would be premature to determine whether the bar order applies to such a claim and that the issue should be left for determination by Judge Gottschall should KPMG actually seek contribution from the D&O Defendants in Adversary

No. 3524.  Their argument as to why there is uncertainty about the
scope about the bar order is that the language (beginning in the
third line of paragraph 5 of the order) "any claims ... against the
D&O Defendants arising out of, related to, based upon, or in any way
connected to the claims, alleged by the Trustee in Adversary No. 194
or matters underlying the Settlement Agreement" may or may not apply
to KPMG's contribution claim when actually filed, depending on what
the claim is.  If it is truly "independent" of the Trustee's claim
in Adversary No. 194 "or matters underlying the Settlement
Agreement," as KPMG contends, then it will not be covered by the bar
order.  If it is not "independent," then it will be barred.

Appellees' argument seems to be that because it is impossible
to tell whether a claim that KPMG "may in the future hold or assert"
is in fact barred by an order barring all such claims, the order is
valid.  The argument falls of its own weight.  There is nothing
exotic about claims for contribution.  They are filed every day, and
their theory and purpose is well understood.  If it is unclear
whether the sweeping language in the initial sentence of the bar
order applies to any and all possible contribution claims, then the
order is invalid for vagueness.  Another reason it is invalid is that
the language "... based upon, or in any way connected to" is not
limited to claims which would affect the administration of the
estate, and "matters underlying the Settlement Agreement" has no
ascertainable meaning at all.

But any doubt about whether the bar order is intended to apply to KPMG's contribution claim is dispelled by the last sentence of paragraph 5 which explicitly bars "...any claim against the D&O Defendants ... , however styled, whether for indemnification, contribution or otherwise denominated, arising out of or derivative of <u>Maxwell v. KPMG</u>, Case No. 03 C 3524 (N.D. Ill.)." Appellees argue that this last sentence has to be read in light of the ambiguity of the first sentence, so that what seems to be the certain language of the last sentence becomes vague. We think the appellees have it backwards: if any interpretation is required, the uncertain language would be informed by the language that clearly expresses the drafter's intent. In any event, there can be no doubt about the reach of the last sentence of the bar order. It clearly exceeds the jurisdiction of the bankruptcy court, and the bar order must therefore be reversed.

## II.

## The Good Faith Finding

In addition to the "bar order," the order of the bankruptcy court approving the settlement contains the following recitation:

> E. The Settlement Agreement was made after arms-length's negotiations, the terms of the settlement are non-collusive, and the Settlement Agreement was made in good faith.

(R. Ex. 5 at 2.) The statement is simply conclusory, with no explanation and no indication as to how the "good faith" of the

settling parties has anything to do with KPMG. The finding was an attempt to gain the benefit of the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2, which provides that where one tortfeasor settles with a claimant in good faith he is "discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(d). However, there is a requirement of the statute that makes the good faith finding in this case a nullity. The Contribution Act applies only to "liability in tort arising out of the same injury to person or property," 740 ILCS 100/2(a), and the discharge from liability for contribution occurs only when "a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury." 740 ILCS 100/2(c). As KPMG points out, the Trustee has not sued the D&O Defendants and KPMG for the same injury to the bankrupt. KPMG's alleged negligence occurred prior to the merger and is the subject of Adversary Proceeding No. 3524. The conduct of the D&O Defendants alleged in Adversary No. 194 allegedly occurred after the merger and consisted of illicit financial transactions entirely unrelated to any negligence of KPMG in connection with the 1999 audit.

The appellees make no effort to explain how the D&O Defendants and KPMG could be regarded as persons who are "subject to liability in tort arising out of the same injury to person or property" within the meaning of the Contribution Act. The arguments they do make in

support of the good faith finding are so lacking in substance as not to require discussion.

The good faith finding is wholly without any basis in fact or law and it must be reversed.

### Conclusion

The bar order and the good faith finding of the bankruptcy court are both clearly erroneous and are reversed.


Date:        May 19, 2005


ENTER:    _____
          John F. Grady, United States District Judge